1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5
6

MEGAN J. C.,

7

Plaintiff,

8

v.

9

COMMISSIONER OF SOCIAL SECURITY,

10

Defendant.

Case No. 21-05232

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11
12

Plaintiff has brought this matter for judicial review of defendant's denial of her

13

application for disability insurance benefits.

The parties have consented to have this matter heard by the undersigned

14
15

Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

MJR 13.

16
17

I.      ISSUES FOR REVIEW

A. Whether the ALJ Properly Evaluated Medical Opinion Evidence

18
19

B. Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony

C. Whether the ALJ Properly Evaluated Lay Witness Testimony

20
21

D. Whether the ALJ's RFC Determination Was Supported by Substantial Evidence

22

II.      BACKGROUND

23

On February 3, 2015, plaintiff filed a Title II application for a period of disability

24

and disability insurance benefits (DIB), alleging a disability onset date of January 31,

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 1

2014. Administrative Record ("AR") 78. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019; therefore, the relevant period is the period between Plaintiff's alleged onset date and her date last insured. AR 934.

Plaintiff's application was denied initially and on reconsideration. AR 77–90. Administrative Law Judge ("ALJ") Marilyn S. Mauer held a hearing on December 7, 2015 (AR 1007) and issued a decision on September 26, 2017 that claimant was not disabled. AR 1004-23. Plaintiff appealed the decision to this Court and the Court ordered on August 29, 2019 that ALJ Mauer's decision be reversed and remanded. AR 1062-73.

ALJ Malcom Ross held a new hearing on remand on May 27, 2020 (AR 966–1003) and issued a decision on December 1, 2020 that plaintiff was not disabled between the alleged onset date through the date last insured. AR 930-58.

Plaintiff seeks judicial review of the December 1, 2020 decision. Dkt. 12.

III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

IV.   DISCUSSION

In this case, the ALJ found that plaintiff had the following severe medically determinable impairments: fibromyalgia; idiopathic intracranial

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 2

hypertension with associated headaches; major depressive disorder; generalized anxiety disorder with panic attacks; and alcohol use disorder. AR 936. Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of light work. AR 939.

Relying on vocational expert ("VE") testimony, the ALJ found at step four that Plaintiff could not perform her past relevant work, but could perform other light, unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at step five that Plaintiff was not disabled. AR 956-57.

A. Whether the ALJ Properly Evaluated Medical Opinion Evidence

Plaintiff assigns error to the ALJ's evaluation of the medical opinion evidence of Dr. Eider, Dr. Byus, Dr. Davenport, and Dr. Wingate. Dkt. 12, pp. 2–9.

Plaintiff summarizes much of the rest of the medical evidence but fails to make any substantive argument about the ALJ's evaluation of any other opinions or impairments other than those discussed herein. Dkt. 12, pp. 6–8. The Court will not consider matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). The Court thus will only consider the ALJ's evaluation of the opinions of the four professionals specifically raised.

1. Medical Opinion Standard of Review

Under current Ninth Circuit precedent, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or

examining physician's opinion is contradicted, the opinion can be rejected "for specific

and legitimate reasons that are supported by substantial evidence in the record." *Id.*

(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722

F.2d 499, 502 (9th Cir. 1983)).

2.  Opinion of Dr. Eider

Wendy R. Eider, M.D. evaluated plaintiff by performing a focused exam on March

26, 2014. AR 482-85. Dr. Eider opined that plaintiff has fibromyalgia, severe pain in her

lower back hops and legs, associated severe sleep disturbance, fatigue, and difficulty

with concentration and memory. AR 483. She also opined: "Given the severity of

[plaintiff's] symptoms and difficulty with concentration and memory I do not recommend

she reenter the work force." *Id.*

The ALJ gave "low weight" to Dr. Eider's opinion, because (1) it was conclusory,

(2) it was inconsistent with the improvements of plaintiff's symptoms, and (3) it was

inconsistent with plaintiff's activities. *See* AR 949-50.

With regards to the ALJ's first reason, the ALJ is not required to accept the

opinion of a treating physician "if that opinion is brief, conclusory, and inadequately

supported by clinical findings." *Ford v. Saul*, 950 F.3d 1141, 1154-55 (9th Cir.

2020); *see also, Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (a physician's

opinion may be rejected "if brief and conclusory in form with little in the way of clinical

findings to support [its] conclusion"). However, even where a treating physician's opinion

is brief and conclusory, an ALJ must consider its context in the record—especially the

physician's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

Although the ALJ cannot reject the opinion merely for being expressed as answers to a

check-the-box questionnaire, the ALJ may permissibly reject a report that does not

contain any explanation of the basis of their conclusion. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (internal quotations omitted).

In this case, Dr. Eider's opinion is not adequately supported by clinical findings. Dr. Eider completed her assessment of plaintiff's hip and back pain, but does not explain how clinical findings were connected to her assessment of plaintiff's memory and concertation problems, nor does she explain the basis for her overall conclusion that plaintiff not reenter the workforce. AR 482-83. Accordingly, the ALJ had a specific and legitimate reason to discount Dr. Eider's opinion and did not err in doing so.

Having found that the ALJ did not err in finding Dr. Eider's opinion conclusory, the Court need not address whether the ALJ erred evaluating her opinion on other grounds. Even if the ALJ committed error on those grounds, those errors would be harmless because the ALJ has provided a specific and legitimate reason for discounting Dr. Eider's opinion. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162-1163 (9th Cir. 2008) (inclusion of erroneous reasons is harmless).

3. Opinion of Dr. Byus

In a February 2015 letter addressed to Social Security Administration, plaintiff's treating chiropractor, Joseph D. Byus, DC, opined that plaintiff's fibromyalgia has "steadily" worsened "to the point where now she is no longer able to work." *See* AR 487. Dr. Byus further opined that plaintiff is "limited from being able to do a great number of things throughout the course of any given day, and she usually tries to limit the amount of activity to only as much as is necessary to accomplish that day (i.e. – housework, groceries, cooking). . ." AR 487.

The ALJ gave "low weight" to Dr. Byus's opinion because (1) plaintiff's symptoms had improved and stabilized, (2) his opinion was inconsistent with plaintiff's

activities, and (3) he had treated plaintiff only three times prior to the date of his opinion letter. AR 950.

Plaintiff filed her application before March 27, 2017. Under the Social Security regulations applicable to this case, "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources." *See* SSR 06-03p. In addition, there are "other sources" such as nurse practitioners, therapists, and chiropractors, who are considered other medical sources. S*ee* 20 C.F.R. § 404.1513(d)(1). *See also Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1223–24 (9th Cir. 2010); SSR 06–3p. Evidence from "other medical sources" may be discounted if, as with evidence from lay witnesses in general, the ALJ "gives reasons germane to each [source] for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

With regards to the ALJ's first reason, Social Security Administration regulations recommend looking at longitudinal records because the symptoms of fibromyalgia "wax and wane," and a person may have "bad days and good days." SSR 12-2p at *6. *See also Revels v. Berryhill,* 874 F.3d 648, 663 (9th Cir. 2017).

Here, the ALJ found that Dr. Byus's opinion regarding plaintiff's inability to perform much of her daily activities due to fibromyalgia-related symptoms was inconsistent with the medical record showing that plaintiff's "condition actually improved and stabilized on her treatment regimen." AR 950. The treatment notes cited by the ALJ show that as a result of her medications, plaintiff's "everyday aches and pains" became "better" (*See* AR 517), that "some migraines stopped" (AR 850), and the frequency of her headaches had changed from daily to weekly (AR 821). However, the record also

shows that shows plaintiff's headaches continued (AR 517, 829, 846, 1345-4) and that

plaintiff often required an increase in the dosage of her medication because symptoms

returned (AR 829, 1385 1485).

Additionally, much of the evidence the ALJ considered regarding plaintiff's

strength were physical examinations showing plaintiff had normal gait and "5/5 motor

strength." AR 491, 528, 826, 837, 920, 1347, 1359, 1476, 385, 467, 822, 831, 1359,

1478. The Ninth Circuit has cautioned against relying upon normal physical examination

findings to discount medical opinions and claimant testimony concerning fibromyalgia,

noting that findings of normal muscle strength, tone, and stability, as well as a normal

range of motion, are "perfectly consistent" with debilitating fibromyalgia, a condition

diagnosed "entirely on the basis of patients' reports of pain and other

symptoms." *Revels*, 874 F.3d at 663, 666, citing *Benecke v. Barnhart*, 379 F.3d 587,

590 (9th Cir. 2004). Discounting Dr. Byus's opinion because plaintiff's symptoms had

improved was not a germane reason.

With regards to the ALJ's second reason, "[a] claimant need not be completely

incapacitated to receive benefits." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir.

2014) (citing *Smolen v. Chater*, 80 F.3d 1273, n. 7 (9th Cir. 1996)). Here, the ALJ failed

to explain how plaintiff's activities of cooking simple meals, performing light household

chores, driving, and shopping conflicted with Dr. Byus's opinion, which stated that

plaintiff is able perform those activities, but only to a diminished extent. AR 487. *See*

*Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017) (ALJ failed to explain how

plaintiff's daily activities contradicted the lay testimony – and reasons were therefore not

germane). Discounting Dr. Byus's opinion based on plaintiff's daily activities also was not a germane reason.

With regards to the ALJ's third reason, "how long the source has known and how frequently the source has seen the individual. . ." is a relevant factor when determining the weight to be given to an "other medical source" opinion. *See* SSR 06-03p. Here, the ALJ discounted Dr. Byus's opinion because he had only treated plaintiff three times. AR 950. While a lay witness seeing a claimant on only a few occasions would be a germane reason to discredit that witness's testimony, in this case, the record shows that Dr. Byus had seen plaintiff more than three times – the ALJ's finding is therefore not supported by the record. AR 368, 370-76. As Dr. Byus was plaintiff's chiropractor for three years, he would have had an opportunity to gain a longitudinal view of plaintiff's impairments and his opinion is a medical opinion that ALJ was required to consider under 20 C.F.R. § 404.1513(e)(2). Therefore, discounting it because of a factual error was not a germane reason.

In discounting Dr. Byus's opinion, the ALJ also relied on the opinion of State agency consultant Robert E. Vestal, M.D. AR 950. Dr. Vestal evaluated plaintiff on October 9, 2015 using plaintiff's medical records. AR 100-09. Dr. Vestal opined that plaintiff "retains the capacity for light work with postural, manipulation and environmental restrictions." AR 103.

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not

1    examined you"). A non-examining physician's or psychologist's opinion may not

2    constitute substantial evidence by itself sufficient to justify the rejection of an opinion by

3    an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted).

4    However, "it may constitute substantial evidence when it is consistent with other

5    independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th

6    Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).  "In order to discount the opinion

7    of an examining physician in favor of the opinion of a nonexamining medical advisor, the

8    ALJ must set forth specific, *legitimate* reasons that are supported by substantial

9    evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing

10   *Lester,* 81 F.3d at 831). An ALJ must consider all opinions, including those from non-

11   acceptable medical sources, which may in some cases even outweigh the opinions of

12   acceptable medical sources. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f).

13          The ALJ gave "great weight" to the opinion of Dr. Vestal because it is consistent

14   (1) with the medical evidence and (2) plaintiff's daily activities. AR 952-53.

15          With regards to the ALJ's first reason, as previously discussed, the Ninth Circuit

16   has cautioned against relying upon normal physical examination findings to discount

17   medical opinions and claimant testimony concerning fibromyalgia, noting that findings of

18   normal muscle strength, tone, and stability, as well as a normal range of motion, are

19   "perfectly consistent" with debilitating fibromyalgia, a condition diagnosed "entirely on

20   the basis of patients' reports of pain and other symptoms." *Revels*, 874 F.3d at 663,

21   666. Here, the evidence the ALJ cited consists of physical examinations demonstrating

22   plaintiff's gait and normal strength. AR 491, 528, 826, 837, 920, 1347, 1359, 1476, 385,

23   467, 822, 831, 1359, 1478. Further, pursuant to Social Security Regulations, when a

24

25

claimant has fibromyalgia, the claimant's "longitudinal record" must be evaluated, considering that fibromyalgia symptoms can "wax and wane." *See* SSR 12-2p. Plaintiff's overall medical record shows that she consistently experienced fibromyalgia related symptoms, including muscle pain and frequent headaches. AR 440, 450, 456, 458, 460-61, 465, 469, 473-74, 476, 482-83, 516, 524, 531, 541, 549, 553, 557, 562, 560, 1302, 1343, 1349, 1358, 1365, 1368-69, 1371, 1373, 1474-75. Because Dr. Vestal's opinion was not consistent with the evidence in the record, the ALJ could not discount Dr. Byus's opinion in favor of Dr. Vestal's on this basis.

Neither could the ALJ discount Dr. Byus's opinion in favor of Dr. Vestal's on the basis that Dr. Vestal's opinion was consistent with plaintiff's daily activities, specifically her ability to cook, perform light household chores, drive, and shop. AR 949-50. "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ provided no explanation as to how plaintiff's activities would be transferrable to a work setting. Further, the record shows that plaintiff's ability to engage in these activities were often limited because of her symptoms. For example, plaintiff often cooked simple or pre-prepared meals that required minimum effort and most of the household chores were completed by her husband. AR 254, 295-96, 490, 495, 1229, 1469.

The Court finds that Dr. Vestal's opinion was not consistent with the evidence, and because the ALJ gave no other legitimate, supported reason to discount Dr. Byus's opinion, the ALJ could not solely rely on Dr. Vestal's opinion to discount Dr. Byus's without committing error.

1

2     4.  Opinion of Dr. Davenport

3     W. Daniel Davenport, MD, evaluated plaintiff on May 23, 2015 by reviewing her

4     records and performing a physical examination. *See* AR 489–92. Dr. Davenport

5     diagnosed plaintiff with fibromyalgia, severe with lower back and bilateral hip pain;

6     anxiety/depression; and memory problems secondary to [fibromyalgia] and chronic

7     fatigue from records. AR 492. Based on these impairments, Dr. Davenport opined that

8     plaintiff: has a maximum standing/walking capacity of "at least four hours limited by

9     fibromyalgia" and maximum sitting capacity of "at least four hours;" needs no assistive

10    devices; has a maximum lifting/carrying capacity was 20 pounds occasionally, 10

11    pounds frequently; can frequently do reaching handling, fingering, and feeling, limited by

12    her ability to sit and stand. *Id*.

13    Plaintiff argues that the ALJ erred by failing to include Dr. Davenport's opinion

14    regarding plaintiff's ability to stand, walk, and sit at a maximum of four hours in plaintiff's

15    RFC. Dkt. 12, pp. 5–6.

16    In his decision, the ALJ did not explain what portions of Dr. Davenport's opinion

17    were given "great weight" and which limitations were included in plaintiff's RFC. Instead,

18    the ALJ simply discussed that it was consistent with (1) evidence showing that plaintiff

19    ambulated with a normal gait and demonstrated intact neurological functioning of the

20    extremities, (2) evidence that plaintiff's fibromyalgia and headache conditions had

21    improved, and (3) plaintiff's daily activities, including cooking, performing light

22    household chores, driving, shopping, and running an online shop. *See* AR 950-51.

23    The ALJ determined that plaintiff's RFC, in pertinent part, would be light work,

24    with the following limitations: "frequently balance, stoop, and climb ramps or stairs. She

25    could occasionally kneel, crouch, and crawl. She could never climb ladders, ropes, or

1   scaffolds. . . She could perform simple tasks. . . She could perform work where standard

2   work breaks were provided. . . She could have occasional workplace changes." AR 939.

3   Nowhere in plaintiff's RFC does the ALJ expressly contain the limitation imposed by Dr.

4   Davenport regarding plaintiff's ability to stand, walk, and sit for a maximum of four

5   hours.

6          To the extent that an ALJ accepts a physician's opinion, he or she must

7   incorporate the limitations contained in that opinion into the RFC. *See Magallanes v.*

8   *Bowen,* 881 F.2d 747, 756 (9th Cir. 1989). When the RFC is incomplete, the

9   hypothetical question presented to the vocational expert at step five is also incomplete,

10  "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *Hill*

11  *v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). As the ALJ did not provide an

12  explanation as to what portions of Dr. Davenport's opinion was given "great weight" nor

13  a reason for why he discounted Dr. Davenport's limitations in plaintiff's RFC, the ALJ

14  erred. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("it is incumbent on

15  the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the

16  physicians' findings[;]" conclusory reasons do "not achieve the level of specificity"

17  required to justify an ALJ's rejection of an opinion); *Blakes v. Barnhart*, 331 F.3d 565,

18  569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the

19  evidence to her conclusions so that we may afford the claimant meaningful review of the

20  SSA's ultimate findings.").

21         5.  Opinion of Dr. Wingate

22         Terilee Wingate, PhD, performed a psychological evaluation of plaintiff on May

23  27, 2015 by reviewing plaintiff's records and a function report completed by plaintiff and

24  administering a mental status examination. *See* AR 493-97. Dr. Wingate diagnosed

25

plaintiff with major depressive disorder, recurrent, moderate; generalized anxiety disorder; and alcohol use disorder, mild to moderate. AR 496. Dr. Wingate opined that plaintiff "is able to understand, remember and learn simple and some complex tasks and that she "has difficulty sustaining attention to tasks throughout a daily or weekly work schedule without interruption from anxiety, depressed mood, fatigue, and pain." AR 497. She further opined that plaintiff "has sufficient judgment to avoid hazards and make work decisions" and that she "can probably work with a supervisor and few coworkers." *Id*.

The ALJ gave "partial weight" to Dr. Wingate's opinion, crediting plaintiff's ability to understand, remember, and learn simple and complex tasks consistent with the medical evidence in the record, but discrediting plaintiff's ability to sustain attention to tasks and tolerate stress because it was inconsistent with the medical record showing plaintiff's symptoms had improved and stabilized. AR 951.

As discussed previously, Social Security Administration regulations recommend looking at longitudinal records because the symptoms of fibromyalgia "wax and wane," and a person may have "bad days and good days." SSR 12-2p at *6. *See also Revels,* 874 F.3d at 663. Here, the treatment notes cited by the ALJ showed that plaintiff had some improvements when it came to sleep disturbance (AR 527, 544) or mood management (AR 825), but much of the evidence also continuously shows that plaintiff had decreased memory and concentration (AR 527, 541, 825, 919).

The ALJ also gave "partial weight" to Dr. Wingate's opinion because "plaintiff appeared to minimize her daily activities during the evaluation" and the opinion was inconsistent with plaintiff's activities. AR 951.

In its August 2019 remand order, this Court found that the ALJ harmfully erred in discounting Dr. Wingate's opinion for failing to explain how it was "speculative and based on Plaintiff's reports" and how it was inconsistent with plaintiff's daily activities AR 1066-71. When an issue has already been decided by the district court in the same case, the law of the case doctrine generally prohibits the ALJ and the district court from re-visiting that issue and deciding it differently than it was previously decided by the district court. *See Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir. 2016) (district court has discretion to apply law of the case doctrine in Social Security appeals).

Here, the ALJ discounted Dr. Wingate's opinion for the substantially the same reasons. Accordingly, the law of the case doctrine applies, and the same reasons cannot serve to discount Dr. Wingate's opinion.

B.  Whether the ALJ's Properly Evaluated Plaintiff's Subjective Testimony

During the hearing, Plaintiff testified that because of her fibromyalgia, she has difficulty sitting and standing for longer than 15 minutes, and she can only walk four blocks before her knees, hips, and back start hurting. AR 985. She also testified that her husband has to do most of household chores. AR 988. Plaintiff stated that her memory has decreased and that this led to her termination from her paralegal job. AR 976, 989.

As to her mental health, plaintiff testified that her depression has affected her "in an awful way" and that as a result, she would "get sad, and down" and have thoughts of suicide. AR 987.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's allegations of limitations, the ALJ cannot rely on

general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

Plaintiff assigns error to the ALJ's finding that plaintiff's subjective testimony was inconsistent (1) her daily activities, (2) her treatment history, and (3) her own statements. Dkt. 12, p. 11–15; *see* AR 947-49.

Regarding the ALJ's first reason, an ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick*, 157 F.3d at 722. Here, the ALJ pointed out plaintiff's ability to cook, perform household chores, make crafts and sell them online, and deal with finances. However, the record shows that plaintiff's ability to engage in these activities was limited because of her symptoms. For example, plaintiff often cooked simple or pre-prepared meals that required minimum effort (AR 254, 296, 490, 495, 1229) and made crafts for five to seven hours a week (AR 977) or two hours a day (AR 1475) while her husband prepared the shipments (AR 978).

The ALJ also mischaracterized much of the evidence regarding plaintiff's inconsistent statements. For example, the ALJ found that plaintiff handled most household responsibilities, and cited treatment notes where she stated she felt

1    "responsible for everything and anything." AR 541. But plaintiff made this statement to

2    describe how her fibromyalgia symptoms affected her marriage while seeking treatment

3    for depression. *Id*. The ALJ also pointed out that plaintiff testified in the 2017 hearing

4    that she could not drive while the records show that she does drive. AR 947. But plaintiff

5    clarified in the 2017 hearing that she had not "100% stopped driving" (AR 53) and has

6    consistently explained in other parts of the record that she would do so if needed (AR

7    255, 297). Finally, the ALJ stated that plaintiff reported she had no hobbies even though

8    the records show that she would read and make crafts. AR 947. Yet the ALJ

9    misapprehended the cited evidence—plaintiff did not assert she had no hobbies, only

10   that she did not partake in them often; the record supports her assertion. AR 256, 298,

11   1231. The ALJ's finding that plaintiff's activities were inconsistent with her own

12   statements is unsupported by substantial evidence.

13       Regarding the ALJ's second reason, as previously discussed, Social Security

14   Administration regulations recommend looking at longitudinal records because the

15   symptoms of fibromyalgia "wax and wane," and a person may have "bad days and good

16   days." SSR 12-2p at *6. *See also Revels,* 874 F.3d at 663. Here, the treatment notes

17   cited by the ALJ showed that plaintiff had some improvements with respect to sleep

18   disturbance (AR 527, 544) or mood management (AR 825), but much of the evidence

19   also continuously shows that plaintiff suffered decreased memory and concentration

20   (AR 527, 541, 825, 919).

21       With regards to the ALJ's third reason, an ALJ may consider inconsistent

22   statements when evaluating the reliability of a claimant's testimony as a whole. *Fair v.*

23   *Bowen, 885* F.2d 597, 604 n.4 (9th Cir. 1989). "A single discrepancy fails, however, to

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 16

justify the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*, 872 F.3d
901, 906-07 (9th Cir. 2017). Here, the ALJ found an inconsistency between plaintiff's
testimony and the record regarding her alcohol abuse. AR 948. During the hearing,
plaintiff testified that she had stopped drinking alcohol four or five years ago (AR 980-
81), but the records show that plaintiff consumed alcohol during this time (AR 914, 830,
845,1507-08) and that it was one of the causes for her termination from her job (AR
237).

While the ALJ correctly observed that there was a discrepancy between plaintiff's
statements and the record, the discrepancy is one that that does not "justify the
wholesale dismissal of a claimant's," especially since the ALJ's other reasons for
discrediting plaintiff's testimony were not supported by substantial evidence. *See Popa*,
466 F.3d at 883–84.

C. Whether the ALJ Properly Evaluated Lay Witness Evidence

When evaluating opinions from non-acceptable medical sources such as a
therapist or a family member, an ALJ may expressly disregard such lay testimony if
the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of
Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

In a letter to Social Security Administration, plaintiff's husband wrote that plaintiff
was terminated from her job due to her ongoing symptoms. AR 327. He also stated that
she has significant difficulties completing her activities of daily living due to pain, fatigue,
and decreased memory and concentration. AR 325-27.

The ALJ rejected his testimony, finding that it was inconsistent with (1) the
medical evidence showing plaintiff had improved on medication, (2) the record
regarding plaintiff's termination from her job and alcohol use, and (3) plaintiff's daily

1    activities.

2        The ALJ's reasons for rejecting the testimony of plaintiff's husband were

3    substantially the same as those given for rejecting plaintiff's symptom testimony. As

4    discussed above, *supra* Section IV.B., these reasons were not supported by substantial

5    evidence. In rejecting the lay witness statements by relying on an incomplete discussion

6    of the medical evidence, the ALJ erred by failing to give reasons germane to each

7    witness for doing so.

8        D.  Harmless Error

9        An error is harmless only if it is not prejudicial to the claimant or "inconsequential"

10   to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*,

11   454 F.3d 1050, 1055 (9th Cir. 2006).

12       In this case, the ALJ's errors were not harmless because a proper evaluation of

13   the medical opinions of Dr. Byus, Dr. Davenport, and Dr. Wingate and the testimony of

14   plaintiff and her husband could change the ALJ's assessment of Plaintiff's RFC and

15   may affect the hypotheticals provided to the VE.

16       E.  Whether the ALJ's RFC Determination Was Supported by Substantial
             Evidence

17       The ALJ committed harmful error, necessitating the ALJ's reassessment of the

18   medical opinions of Dr. Byus, Dr. Davenport, and Dr. Wingate regarding plaintiff's

19   limitations and the testimonies of plaintiff and her husband on remand. *See* Sections

20   IV.A.3.–C., *supra*. Therefore, the ALJ must reassess the RFC on remand. *See* Social

21   Security Ruling 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and

22   address medical source opinions"); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 18

685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective").

Because the ALJ must reassess the evidence, and a new set of hypothetical questions may be asked of the vocational expert during a new hearing, the ALJ is directed to re-evaluate Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform given any changes to the hypothetical questions, and the RFC.

F.  Remand With Instructions for Further Proceedings

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

1    The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

2  satisfied, the district court still has discretion to remand for further proceedings or for

3  award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

4    As discussed above, the ALJ harmfully erred in evaluating the medical opinion

5  evidence of Dr. Byus, Dr. Davenport, and Dr. Wingate and the testimonies of plaintiff

6  and her husband. On remand, the ALJ is directed to re-evaluate the opinions of Dr.

7  Davenport and allow plaintiff to provide additional testimony and evidence, as

8  necessary to clarify the record.

9                                   <u>CONCLUSION</u>

10    Based on the foregoing discussion, the Court finds the ALJ erred when he

11  determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore

12  REVERSED and this matter is REMANDED for further administrative proceedings.

13    Dated this 15th day of February, 2022.

14

15

16

                                        Theresa L. Fricke
17                                      United States Magistrate Judge

18

19

20

21

22

23

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 20